Hello everyone. We're here for the Center for Biological Diversity v. EPA matter. It is 23-9503 and we'll start with the petitioner. Thank you, your honor. Good afternoon. May it please the court. Ryan Mahar on behalf of Petitioner, the Center for Biological Diversity, which I'll refer to as the center. I'd like to Okay. That'll be up to you. Of course. Yes. Okay. Thank you, your honor. I'd like to get right to the commencement of operation definition issue. And I'd like to start by quickly reemphasizing three important points that inform the conversation. First, the commencement of operation is the dividing line. Pollution that's released before operations commence is not considered in permitting and is given a free pass. Pollution emitted after operations commence is considered and permitted. Second, when something is added to the SIP, it becomes federal law for the first time. It has the force and effect of federal law. See Utah Physicians. And EPA through its enforcement authority and the public through Clean Air Act citizen supervision at 42 USC 7604 can enforce in federal court what's in the SIP for the first time. State interpretations, state policy and state only rules are not controlling when the SIP is applied and interpreted in federal court. And third, the pre-existing first sentence of the commencement of operation definition includes fracking emissions. That's because pursuant to the first sentence alone, an operation commences, excuse me, a source commences operation when it first conducts the activity for which it was designed and permitted. An oil and gas well pad is designed and permitted to bring oil and gas to the surface, which indisputably and produce oil and gas, which indisputably takes place at the fracking phase to the point where fracking products like gas can be sold to market as API admits in its amicus brief in related case 22-9546. I'm sorry to interrupt you, but do you mind if I stop you with a quick question about your second and third points and how they relate to the issue of vacator? If you are correct on your second and third points, that if we were to vacate the approval of Colorado SIP, that we would be left for Colorado regulators with the new more lenient regulations that would exclude emissions through completion of the well drilling and fracking. But under the federally enforceable SIP, because of the second point that you made, EPA, federal regulators will have a more lenient, or I'm sorry, a stricter set of regulations that would include the emissions that would be excluded by Colorado regulators. So if you are right in your interpretation of that pre-existing first sentence of the commencement of operations provision, it seems to me that vacator would be disruptive because we're going to have different, substantively different regulators looking at the same well pad and an oil and gas operator for Colorado regulators is going to have a different, more lenient set of regulations to comply with than he would for federal regulators. Why would that not be disruptive? Yes, your honor. Well, first I'd like to point out that pursuant to the EPA and Colorado scope arguments, they're saying that the first sentence and the second sentence are redundant of each other. So that vacature of the second sentence should not result in confusion and contrast between state and federal permitting regimes. Now, that is not our position. Let me stop you for a second, but that's not true if you win. If you get to the point where you get to have it vacated and sent back, presumably that means that you've prevailed and convinced everyone that the second part of the paragraph is different. That's correct, your honor. And that leads me to the second point, which is that it's a balancing of harms. The harm of potential confusion between state permitting regimes, which has already persisted as Colorado brief makes clear. This has been an issue that's been up in the air for years and direction from this court would be very useful in guiding regulated industry. But on the one hand, you do have potential contrast between the state and the new permits that are excluding fracking emissions improperly. And they're getting weaker, minor source permits rather than major source permits that are more protective of air quality. Well, let me let me let me ask the question then, because in looking at the briefs and looking at the question of whether or not there was a waiver or not, it appears to me that I agree with the EPA that your argument in your briefs is a whole lot clearer and understandable than what it was before the hearing. So with the confusion and you recognize the word confusion in your own response, both to Judge Bacharach and Judge Carson, why isn't it more appropriate to send this back to the EPA and with the argument that now is completely and make it without without the vacator? Yes, Judge Baldock, when I use the word confusion, I was referring to the existing status of commencement of operation among what I when I'm when I'm referring to the word of confusion, I'm referring to myself. So I just want you to understand where I'm coming from in regards to this is not an easy case, in my humble opinion. So the confusion may not be on your part. The confusion may be on my part, but I'm one of the people that you're looking to to explain the thing. And I've got a couple more questions later on about explaining. So go ahead. Proceed. Yes, Your Honor. The reason why vacature is inappropriate under the first excuse me, is required under the first factor of allied signal as applied through DNA citizens is that the exemption of fracking emissions in the second sentence of the commencement of operation definition is an illegal exemption and it can't be corrected on remand. This court vacated the illegal exemption for emissions from temporary activities in related case 229546. That's a strong example because what EPA and Colorado say they'll do on remand is supplement the record to demonstrate existing state practice. And that brings me to a really important point here on the scope arguments where EPA and Colorado are claiming we should have challenged the first sentence of the commencement of operation definition, which is not specific to oil and gas. When that sentence came out 30 plus years ago, the original definition was adopted into the SIP over 30 years ago. And what they're asking the court to do is to waive judicial review in this specific circumstance where an original definition is being interpreted, where they want to adopt the state's interpretation of that original definition in the SIP in the form of federal law. They're saying that judicial review is not appropriate in that circumstance. Let me quiz you a little bit about where you think these new emissions are coming from, just so we're clear. You say they're fracking emissions. I mean, when does that occur? Are these the fracking emissions? Are there emissions occurring when you're pumping the fluids and sand down into the well bore? Or is there something before that that you're worried about? Yes, sir. So emissions can result at the drilling phase. Fracking, I think, is the most readily understandable phase where oil and gas is first produced. Hold on a second. We got to pumping fluid and sand down into the reservoir under pressure. So, I mean, there's nothing coming out of the well bore at that stage, right? The fracking phase includes flow back, which is when the oil and gas returns to the surface. Okay, fair enough. All right. All right. Now, let me ask you this then. Why isn't that captured by the new rule where it says, but no later than the end of well completion operations, including flow back? I mean, that seems to me, the plain reading of that seems to me to capture what you're talking about. The reason is because the first part of the new sentence requires permanent production equipment be in use and a consistent flow of products to sales and gathering lines and storage tanks. I totally see that, but then it's qualified with the term, but no later than the end of well completion operations. So, doesn't that supersede the earlier statements in the sentence? Well, well completion is a separate phase from the fracking phase. So, I won't push back if this court wants to say that the second sentence requires fracking emissions be included in commencement of operation. The reality is they haven't been, and they aren't. And I think specific to your point, Judge Carson, the reason for that is because the permanent production equipment and the consistent flow of product modifies that later qualification and wells can be completed after the fracking phase. So, there can be fracking that occurs and be concluded before well completion occurs. But again, and I see I'm over time, I would like to continue. No, no, no, being over time in this case isn't going to help you much. Because why isn't then in fracking, where you start the fracking, it doesn't produce anything. It's not until the flow coming back. Why isn't the beginning operation secondary? The fracking phase includes the flow back phase when oil and gas is returning to the circuit. You're not answering my question. I've divided this up. Why isn't then that a second, or I just forgot the word that I'm trying to look for in there. But to me, that makes it secondary and not the primary. Fracking is the primary, which doesn't produce anything. It's the flow back. Parse and parcel are the same thing. That's secondary. Well, flow back still precedes the commencement of operation date as this second sentence defines it. So, if you want to focus on flow back emissions and use that term, they're still not being included in the second sentence. Oh, but secondary is emissions, isn't it? Are you saying secondary emissions in terms of the exemption that applies to secondary? Yes. Oh, I apologize, Judge Paul. I see. This court did reject that argument implicitly in 2295-46. But to address the question directly, the reason why flow back emissions don't fall within the secondary emissions exemption is because secondary emissions only apply to emissions that aren't from the source itself. The well at a well pad is the source itself. And when flow back occurs, oil and gas is coming from the well itself. Secondary emissions would be like an on-site cement plant that's designed to provide cement while you're constructing a power plant. The cement plant emissions are construction related, are independent, and are not coming from the source itself, which is the power plant in this circumstance. But here again, flow back results in oil and gas coming from the well, part of the stationary source, and doesn't qualify as secondary emissions. Well, it also seems to me, and I need you to give me an example then, of an emission activity that is secondary but not temporary. Yes, Your Honor. Well, I do think, I think that's immaterial. I think the point is that, actually, and what this court found in 2295-46 is the opposite, that all secondary emissions can be temporary, but not all temporary emissions are secondary. And that's the important point that applies to that. That's what was said in the first case. Now give me a clear, simple, you know, example of what we just said. That's temporary, but not secondary. Well, Your Honor, again, I think that's immaterial, and I can't provide a specific, it's fair to say that all secondary emissions are temporary. I think that does not overthrow or reject our position, because what we're saying is not all secondary emissions, not all temporary emissions are secondary. We're saying the inverse, and that's what matters in oil and gas pads. Counsel, I want you to be honest, just understand clearly. I try not to ask questions in these cases unless I need it for me to be helpful to me to understand and get a clear picture of what's going on. So I'm not trying to pick on you. I'm trying to help myself understand what's going on here. Now, the two questions I've just asked you, I'm going to ask your opponent in regards to that. She just gets the heads up that I've already asked you the question, and I need an answer. So go ahead with your argument. Well, I have a little more time. Judge Becker, can we continue for a moment? You bet. And by the way, Mr., how do you pronounce your last name again? Mahar. It's not phonetic. Mahar. Okay. Mr. Mahar, you will get some rebuttal time. Thank you, Judge Becker. Okay. So you would agree that the flowback omissions are not secondary? Correct, Your Honor. Right. Okay. I'm just trying to figure out how all of this fits together. And so is the crux of your argument flowback forward? Because one of the things that's been brought up in the briefing or in the comments were specific examples of where the increase in emissions were coming except from fracking. I mean, fracking emissions are... Well, tell me this. Just as far as fracking itself goes, do you agree that those are secondary? No, Your Honor, because fracking... Well, there's two components to fracking. There's the engines that are involved in the process. Those are secondary emissions. We're not talking about engines involved in fracking in this case. But with fracking... And again, I don't want to fight the distinction between fracking and flowback. So if we're saying fracking is just the process of injecting liquid sand and a proprietary blend of chemical additives into the ground without the flowback stage, then there aren't emissions associated with that necessarily. But with flowback, you have oil and gas coming out of the well itself, and those emissions are not secondary. Okay. I agree. And I mean, Judge Bachrach and Judge Baldock, and maybe everyone else might disagree with me. I see a line between flowback and fracking. The fracking procedure is pumping everything into the ground. The flowback is what happens when you open the well back up to produce it. All that stuff has to come out before you're going to get anything else. So I just want to see where we're starting. So basically, emissions are starting from your point of view when we start flowing the well back as far as non-secondary emissions. Not to add another component to this, but emissions can result at the drilling phase too. I presume they could. They can be almost non-existent though with a mud program and different things like that. That's why we focused on fracking or flowback. But I agree. Flowback could be a dividing line, but flowback occurs. The state is not considering flowback emissions as part of its NAAQS analysis or the major versus minor permitting decision. According to the state and EPA, commencement of operation occurs after flowback once there's a consistent flow of product because flowback can result in intermittent emissions. And just so I'm clear about that, that's not because they've made some statement. I mean, they obviously disagree with you. I think their position is, no, we don't think that's right, and we disagree about what this language means. And you're just on a textual position. Your position is that that does not capture the flowback after you've fracked a well or after you've gone in and done some other kind of completion. Yes, sir. The plain language of the first sentence includes those emissions that you just mentioned. But the second sentence excludes them. And for the first time in federal law, in the SIP, which means our challenge should be in the scope of this rulemaking, because this is a state interpretation that's being lodged into federal law, and the state and EPA are trying to say that it should escape judicial review. Okay, so let me, so to avoid, this will be my last one, Judge Bacharach, to avoid overburdening my colleagues with my additional questions. If we determined from a textual basis that this rule contemplated emissions beginning after you started flowing a well back, would your, would you, would that satisfy you as far as your position that it is allowing, that it's changing the status quo, that it's a revision to the old rule and not a clarification? It would, Your Honor, yes. Okay, thank you. By the way, Judge Carson, I do want you to, you know, be able to ask all your questions, so don't worry about me or Brother Baldock. Do you have any other questions? No, that's all I have. Thank you. All right. I don't, I don't have any either. Okay. Well, thank you. Paul, let's give Mr. Bacharach, Bacharach, Bacharach. Yeah, I'm flexible with it. Okay. You know, you can, you can retaliate, you can call me Bacharach. I'm sure you've gotten that before. Let's give Mr. Bachar four minutes of rebuttal, and let's give both of the Respondents' Council an additional two minutes. None of you have to use the additional time that I want you, want the time to be equitable. So we'll hear from, I think Mr. Mitchell. Yeah, you're on mute. Thank you, Your Honor. Good afternoon, and may it please the Court. My name is David Mitchell on behalf of EPA. I'm going to receive three minutes for the State of Colorado. We're looking here at two Clean Air Act... Okay. I'm sorry to interrupt you so quickly. So we have divided the clock. So this, this clock is yours. So you have 1346 left. Okay. Thank you. Ms. Mayhew will have her own clock. Great. Thank you so much. EPA approved two Clean Air Act State Implementation Plan revisions to Colorado's Regulation 3 at issue here. First, it approved a revision that maintained Colorado's prohibition on commencing construction of a covered source without a general new source review permit. This Court should deny the petition on this claim because it continued Colorado's lawful prohibition on construction without a permit, and petitioner-specific challenges to other aspects of Colorado's program are not subject to review here. Second... Oh, I'm sorry. Go ahead with your second point before I start asking about that. Sure. Second, EPA approved a revision that added an oil and gas well-specific provision to the definition of commencement of operation. This Court should deny the petition on this claim because petitioner did not preserve it. Petitioner did not present to EPA in its comment on the revision a very different argument in its brief and therefore forfeited the claim. If this claim was preserved, though, the Court should remand to allow EPA to consider these arguments that were not presented to EPA. So, Judge Bacharach, I'm going to start with that first issue about commencing construction. This was a limited revision that just replaced some words and made a technical change to the regulatory text to align it with Colorado's statutory text. It replaced commence construction... Now, when you say... Let me kind of drill down, no pun intended on that point. So, when you say that you were conforming it to the statutory regime, are you saying that you are... That that second sentence on the timing of the commencement of operation, that you were conforming that to the statutory revision or the prior, the previously approved SIP of Colorado? So, Your Honor, I'm talking about the other issue about commence construction, not commencement of operation. So, just to make sure... Oh, I'm sorry. You're... Okay, sorry. So, that commence construction prohibition, Colorado maintained it in that SIP revision. Okay. It didn't change anything about that program. I... No, I... Okay, now I'm with you. I appreciate you clarifying. So, let me ask you about that, though. Is building permit number 10, does it, in fact, allow construction to immediately commence as soon as the entity, the industry, sends the registration to the Colorado Air Division? It does allow commencement upon registration, but, Your Honor, that is not a question that this court can review here. Review of those permits is not available in federal court. It's not part of the state implementation plan that Colorado implements. These permits are reviewable in state court. They're not part of the SIP revision, and they're not part of the SIP at all. It's simply outside this case. Let me play devil's advocate with you. You know, I understand you say that that was back in 1997, but if you change the language, perhaps it was no intent to change the substance from what it was 27 years ago, but if you change the language, commence or construct, operate, et cetera, by changing the language, don't you... Do you not reopen that to have us revisit for judicial review whether or not the change of language, in effect, allows Colorado to make these changes and prevent regulators from halting construction until there's a preliminary assessment of the compliance with the air quality standards? Your Honor, not only does it not reopen review, this court can't review those permits. Permits that are issued by the state of Colorado are not reviewable in federal court. I understand that. I don't think anybody would question that, at least I don't. But my question is, when you change the language in this, when Colorado changes the language in the SIP, and now EPA is approving that change in the language, why doesn't the approval of the revised language subject that to judicial review? The revised language is subject to judicial review, but the revised language didn't change the prohibition. Before the change, the existing regulation prohibited a source from commencing construction. It shall not commence construction. The new regulation says, shall not construct, operate, or modify, and then it has a lower provision that says you cannot commence these activities. So there was no change in the so far as you were reviewing the regulatory change, the review would be, well, you still can't commence construction under the change. So you can review it, but there's no change. It maintains the prohibition. The actual challenge is... Let me stop you for a minute. So your position is, is because it doesn't effectively change anything, there's nothing to review. I mean... There's something to review, but the review would be, well, Colorado prohibits construction, commencing construction without a general resource review permit. That's what's required. That is a legal SIP. The question about the actual permits, that's not reviewable here. And the other challenge that petitioners make to the notice and comment period, that's just not related to the prohibition against construction. Whether you have notice and comment for only the permit in the first instance, or you have notice and comment for the individual coverages other than the permit, doesn't change the fact that the regulatory text and the regulations prohibit commencing construction without a permit. It maintains it. It's just not related. It doesn't reopen the notice and comment provision of the general permit program. And it doesn't allow review of the actual general permits. General permits, because there's no reason to reopen it here. And in fact, petitioner didn't even argue that there's an after horizon event or a reason that would reopen those unrelated provisions. Now, your honors, I'm going to turn to the commencement of operation issue because it seems there is a lot of confusion about this question. And there's a lot of confusion because petitioners' argument and claim is ever evolving. At the state level, petitioner did not challenge the addition to definition of commencement of operation that Colorado added. And then in their comment that they submitted to EPA, it was narrow. It was more limited here. And it relied on a different factual and legal theory. Their theory and their comment was that EPA, Colorado was somehow excluding pre-production emissions or emissions prior to operations. So EPA looked at that. Is that really fair, Mr. Mitchell? Because they specifically in their comment to EPA in the rulemaking specifically challenged in a number of places the fact that the SIP was excluding emissions from fracking, from drilling, from well operation. And so now the EPA's response was, well, we're not changing anything. We're simply clarifying it. But Mr. Maher had been or at least his client in the rulemaking was specifically challenging the exclusion of these of the preliminary assessment's consideration of the very emissions that he is challenging in his petition for judicial reviews. So how can you say that he has at least reasonably alerted the EPA to the fact that this new federally enforceable SIP is excluding emissions that shouldn't be excluded? Your Honor, first, it's because this claim is very different than the comment. The comment is focusing on pre-production emissions, emissions prior to operations. It's only talking about modeling consequences for the next. There's no discussion of major sources, no reference of potential to emit Colorado's preliminary analysis, or even a change in when commencement of operation occurs, which is what this claim is actually about. It's notable that it only cites EPA's regulations for the minor source permitting program, 40 CFR 51-160 to 164. It leaves out everything about the major source program. So when EPA took a look at what this comment is focusing on, emission prior to operation, it said, okay, emissions prior to operations, what does the existing definition say? Well, commencement of operation begins when a source first conducts the activity that it was designed and permitted for. Oil and gas wells are designed and permitted to produce oil and gas, not to construct a well. So pre-production emissions, emissions prior to operations, those occur before that. There would be no need for EPA to consider modeling because this revision clarification, when you butt it up against the plain language of the existing definition, it wouldn't have changed anything with respect to those emissions. Now, you turn and you look at the argument, the claim that's actually before this court and the petition. It's very different and it starts on a different fundamental premise. It says that commencement of operations occurs before construction ends, that there's some delta between construction ending and commencement of operations. And that this clarification moved commencement of operations from sometime during construction to the end of construction. And that these newly excluded emissions have some sort of effect on the potential to emit and effect on the major source program. EPA didn't look at this question or consider it because petitioner did not raise it clearly to EPA in its count in a way that would trigger a review of this, especially when they're only citing minor source regulations in that comment. And it's notable, your honor, and I do have to take a minute to make this point. Petitioners argue in their brief that the Clean Air Act 307D case law applies to this issue, but this is not a Clean Air Act 307D action. The case law that is applicable here are the federal common law forfeiture doctrines that apply outside of a statutory context. And they require a petitioner to have raised its arguments in the comment period before EPA. It's very notable in the Silverton Snowmobile Pub case. That case found forfeiture of an argument in a reply, not just because it wasn't presented in the opening brief, but because the specific argument was not presented to the agency. And that makes sense. The purpose of this whole exercise of notice and comment is to provide the agency notice so they can actually address the issue that the commenter has with the action. And this comment did not raise this issue about major sources, PTE, whether permitting is not proper under the law. And in fact, the legal theory in petitioner's brief is different. When you look at the comment and it's focusing on those emissions modeling, emission modeling is about the actual effect of emissions going into the air and what their concentrations are. The brief is arguing something very different. It's arguing a technical violation of EPA's new source review, major source regulations. It's saying you don't have to look at modeling in that instance. It's just, it's illegal. They included additional emissions that are not being captured. You butt it up against EPA's regulation and that doesn't comply. That's a very different question, very different legal theory than EPA needs to consider modeling to figure out what effect these sources have. Now, your honor, if you were to find- Let me ask you a few questions about that. So are you trying to communicate to us that maybe the original argument or original position in the comments had to do with some secondary sources that aren't in play now, that the focus was what was happening during drilling as far as emissions from engine, mobile off-road engines and things like that? I mean, at a very specific level, the arguments are different. At a higher level, they say the same thing. I mean, I'm just trying to figure out what the context was at the time they were making the comments because it may have been before our recent case. Your honor, these issues are not the in some sort of mandated requirement for PTE in EPA Colorado's regulations, which is with respect to these emissions. And that's just simply not the case. Nothing on the face. I see my time is up, your honor. May I finish? Sure. Nothing in these regulations mandates that PTE be calculated at this preliminary analysis point and that certain emissions are excluded before and certain emissions are excluded after. I encourage you to go and read carefully. It doesn't say that. Of course, Colorado is going to have to conform its state implementation plans with the decisions of this court. But this regulation does not foreclose that. The specific requirement that the specific comment that EPA looked at from CBD was very different, presented a very different factual and legal theory. And EPA should have the opportunity to consider that if you find that this issue was preserved for appeal and consider it on remand without vacater. Thank you, your honor. Okay, Judge Baccarat, can I can I ask him a few more questions? Yeah. Okay, so I asked your I was asking your opposing counsel some questions about the text of the new the new the new rule, or the flowback. Do you recall sort of the colloquy he and I were having about that? Yes, your honor. All right, wait, tell tell me, you know, give give me your two cents on that. I mean, I can ask you specific questions if you'd like, but you can just give me your position if you'd like. Your honor, I think the most important point here is that EPA didn't parse these emissions. EPA took a look at a comment that was talking about pre-production emissions, emissions prior to operations and butted that against a regulation that said commensurative operation occurs when the source first performs the activity that it was designed and permitted for. And operations production of oil and gas is what it's designed and permitted for. So EPA didn't go through a process of parsing what does this emission mean at this state, at that state. It took the comment for what it was and it butted it up against the definition, against the existing definition. Now I'm sure you'll hear it for Colorado, but one of the whole purposes of this clarification is that industry was interpreting this to mean something even later. They were interpreting it to mean the date of first production, which meant that the, that there was permanent equipment on site and that there was there was full flowback, continuous flow. This definition puts a stopgap and clarifies that no, no, no, no, no, you can't avoid commencement of operation by just keeping your temporary equipment on site. Once you have continuous flow, regardless of whether it's temporary or permanent equipment, you're going to have commencement of operation. And oh, by the way, there's a stopgap at the very back. If you complete well operations, commencement operation has occurred. So the whole purpose of this was to resolve this clarity, this confusion, this misinterpretation that industry had. And it's one of the reasons why you should leave the rule in place on remand, if you're remand, and if this issue were properly preserved, because if you were to not, we'll have a situation where vacating the rule will result in uncertainty and potential disruption because vacating won't change Colorado's state program, but it will make the operation of the revision that was meant to and when this happens, unenforceable under federal law. And that would be a result that it's not good for Colorado, it's not good for industry and certainly shouldn't be viewed as good by a petitioner. Thank you. Okay. So it sounds to me like you don't necessarily have a strong position on what I was asking Mr. Mehar about and that you want Ms. Mayhew to answer that question. Your Honor, EPA didn't look at this issue. Okay. I'll ask her the question. Yes, Your Honor. Judge Carson, did you have anything else? I don't. Thank you. Okay. Judge Beaulat. Let me just ask one question just to make sure, you know, I think I know the answer, but I just want to make sure. If we decide that the issue on the timing of the commencement of operation was preserved, I assume that your position, Mr. Mehar, is that under Chenery, we don't have any discretion to uphold it under some other, or Mr. Mitchell, rather, that we would need to remand and then the issue would be whether to vacate the existing rate rulemaking or not, right? Your Honor, that's what, EPA is requesting an opportunity to take a look at the arguments that petitioner brought in his brief but didn't have in his comment. It's EPA's position that vacater is not appropriate. No, I understand, but I just wanted to make sure that you don't think we could uphold, if it was preserved, that we could reject on the merits this argument that Mr. Mehar has made about the timing of the commencement of operation. Did you acknowledge that EPA hasn't addressed it? That's right, Your Honor. EPA hasn't addressed it. In this court, you give EPA an opportunity to do so without vacater. All right. Thank you. Can I jump back in just to make sure we've nailed that down? So your position is, even if we think Mr. Mehar is wrong because EPA has not considered this, his argument, because you don't think it was presented in the comments, that it needs to be remanded without vacature back to you so you can consider it in the first instance. Your Honor. That's what it sounded like to me when you were talking to Judge Beckerack. EPA is requesting a remand to reconsider this question. EPA has not expressed an opinion on the merits of the arguments that Petitioner made in the brief that weren't in the comments, and EPA is asking an opportunity to address that before the court. Okay. Fair enough. Okay. Thank you. Judge Carson, you didn't have anything else, did you? No, I didn't. Thank you. Okay. Okay. You bet. Miss, okay, tell me how you pronounce your name so I don't mess that up. You said it exactly correct, Mayhew. Thank you. Great. Great. So, good afternoon, and may it please the court. My name is Laura Mayhew, and I represent the state of Colorado in this matter. And I just want to come out of the gate and say the reason that Colorado does not permit these type of pre-production emissions Petitioners raise here, and that's specifically what they raised in their brief, is drilling, fracking, and well completion, is because Colorado has viewed those as secondary emissions, or they're emissions from non-road engines, and they are properly excluded from the permitting process, as this court just held last year in Case 22-9546. However, the question of what emissions should be or should not be included in Colorado's permitting program is outside the scope of what EPA considered, because nothing changed. The limited SIP revisions at issue did not change how Colorado treats these pre-production activities, or the fact a source must obtain a general permit prior to construction. EPA's that Colorado has applied it, has Colorado applied it as an interpretation of the SIP that was approved in 1997, or is this some sort of internal procedure that the Colorado Air Division has interpreted? And I'm, your honor, I'm talking specifically about how the division or Colorado has looked at pre-production emissions for permitting purposes. Yeah, that's what I'm asking about. Yes, yes, so that is how they have looked at it, and again this SIP only clarified how they have handled these pre-production emissions. Yeah, and what Mr. Maher has argued in his reply brief is that may well be good, but how the Colorado Air Division has internally interpreted its standards aren't necessarily federally enforceable unless EPA has approved the language in the SIP and has endorsed Colorado's internal interpretation that fracking well completion and drilling would be excluded, that the emissions would be excluded. So, in other words, I think what his argument, at least that part is, well there's still going to be a disconnect between what the federally enforceable limits were until the recent approval of the SIP and the recent approval of the SIP because it, you know, it doesn't matter for purposes of EPA's federal regulations what Colorado had done internally. And your honor, so that part of the rule was already in Colorado SIP, and in fact in EPA's final rule, which I believe is on page six of the administrative record, they acknowledged that drilling and fracking are not regulated by regulation three, which is Colorado's permitting regulation. And so EPA recognized that those emissions were not part of the permitting process, and therefore in this change are also not part of the permitting process. So, it was already in the SIP. I see. And however, I want to go back and talk about the question of what emissions should or should not be are again outside the scope of what EPA considered. And EPA's record supports in numerous places that these limited SIP revisions did not change Colorado's program. Some examples of the record are found at pages 709 through 711, 751 through 755, and 1865 through 1866. This is where Colorado discussed in its 2019 state rulemaking documents the purpose, reasoning, and consequences of these revisions. And petitioners supported these revisions and did not challenge them under Colorado's APA. Well, I don't know that, I mean, I read Colorado's, I mean, the CBD's comments in the Colorado rulemaking. And can you point me, I have here, I mean, I'm not, this isn't a pop quiz, but could, you know, starting on 899, can you point me to any specific statement that CBD had said in the Colorado rulemaking that we endorse, we support any specific, any specific provision, much less any of the provisions that they're challenging here? And yes, your honor, I appreciate that question. On page 900 in the center's request for party status, they said that they are requesting party status to advocate for the adoption of these revisions. Yeah. I mean, they say over and over again, but that, for example, on page 900, but we will advocate for further improvements, which it may include, but are not limited to. And then there's five, you know, bullet points. And they conclude, as you say, on page 900, with saying that they request party status so that it can fully participate in the rulemaking. And so I don't see on page 900 where they, where they suggest approval of any specific change, but am I overlooking something on the page? Well, and I can pull it up that it, they said they advocate for the adoption, to advocate for the adoption of these revisions. Okay. Let me, can I ask you a different question? Sure. You know, we deal with invited error all the time, not necessarily in this context, but you know, a typical example is a criminal case. Let's say I get charged with a crime. And I ask Judge Carson, who's conducting the trial, Judge Carson, would you please instruct on self-defense? And Judge Carson instructs on self-defense. And then on appeal, I tell the Tenth Circuit, Judge Carson made a big boo-boo because he instructed on self-defense. He shouldn't have done that. I have invited Judge Carson, the tribunal under review to make the mistake. Here, Mr. Maher is not challenging anything that Colorado has done. They're challenging what the EPA has done. So I've never seen a case, and maybe this is going to be the first time, but I've never seen a case where the argument for invited error is that the tribunal under review is not an issue. It's a previous entity. In other words, you're saying that theoretically that Mr. Maher has encouraged Colorado to do something in their rulemaking. But again, we have no jurisdiction to review what Colorado did. We only have jurisdiction to review what the EPA did. And you haven't argued that CBD did anything to invite the EPA to improperly approve these changes. How can we, even if we put aside the fact that there's not any cases on it, how can we utilize invited error when there's no argument that they invited the EPA to do it? Well, and Your Honor, if you actually look at EPA's record, the majority of EPA's record is Colorado's rulemaking record. And so Colorado did acknowledge that the invited error doctrine has not been applied in this context. But certainly EPA looks at what happened during Colorado's rulemaking procedure in determining what it's approving and what the rule did. I see. Okay. Thank you. And Your Honors, I see that I'm out of time. May I conclude? I've taken up so much of your time. Pardon? Of course. Can I ask a question first, Judge Beckerach? Oh, sure. Although the way this argument's come down, it sounds like maybe nobody agrees that this even needs to be answered, but I'd be curious of your response. Would you agree with me that omissions that occur during flowback are not secondary? So, Your Honor, and I would have to defer to my client, the permit engineers who work with this all the time. What I can point you to is to page 1865 of the record, which is the statement of basis and purpose when Colorado adopted these rules. And they talked about the reason, you know, commission clarified that the end of flowback, i.e. when the product is capable of consistently flowing to permanent equipment, is the latest date at which commencement of operation may occur. And so, it certainly sounds like that is included in commencement of operation. Okay. So, I proposed a certain textual analysis to Mr. Mehar that said that, hey, once it's flowing back, that's it under this rule. It's no longer secondary. And he said, well, I'm not sure because he was concerned that the word's permanent and you had to have all these consistently flowing wells and things like that. Would you agree with my textual analysis that despite those terms up above that they're modified by the flowback provision where it says that, hey, listen, at the latest, this starts a flowback? And I would agree that as soon as that oil and gas well production facility is operating as it was designed and permitted for, it's commenced operation. And this is actually maybe a good time too to remind the court Colorado permits, they do permit the entire facility, facility-wide permit. But as they're doing pre-construction permitting, they're permitting the different equipment. So, maybe separators and tanks and different things. So, as soon, and again, that is also explained on 1865, page 1865, that as soon as one of, whether it's a separator or a tank or whatever type of equipment, as long as it qualifies for this and complies with this definition, that commencement of operation has occurred for that piece of equipment. And I don't know if that clarifies or confuses the issue, hopefully clarifies. All right. Thank you. You're welcome. So, and do you, and is that okay if I take 30 seconds to wrap up? Okay. Thank you, Judge Bachrach. I appreciate it. So, in conclusion, it's Colorado's position that there's no record evidence or legal authority supporting petitioners' allegations, and therefore they have failed to carry their burden. Conversely, the record supports EPA's determination here that the SIP revisions made no substantive changes to Colorado's permitting program, and therefore it should be upheld. And therefore, also, remand to reconsider is not appropriate or necessary here. Thank you. Thank you. By the way, Judge Ballard, did you have any additional questions? No, I've had it as a confusion enough. You have not. Okay. Well, thank you very much, counsel. And Mr. Mahart, you've got four minutes. We cheated you out of your four minutes, so you have your four minutes back. I do appreciate it. I'd like to just jump in where Judge Carson left off, because I did not mean to come across like I was equivocating in our discussion, because I do have a clear position on this. And I'd just like to state it simply, maybe that'll help instead of the way it came out in a question and answer format. But the qualification of no later than the end of well completion operations, the issue with that is that, say there's 10 wells at a well gap, which is an average number, the end of well completion operations implies the very end of well completion at the last well. But fracking can take place over days and even weeks in certain circumstances. So all of those earlier wells will be fracked, and the end of well completion operations, including flowback, will only occur when the last well is fracked and then operations commence. So you're missing the vast majority of fracking emissions or flowback emissions, adopting the that you've put forward. I'd also like to return to Judge Backhart, your initial question about vacature and the consequences. I just wanted to clarify something. In the event of a difference between state regulation and federal regulation with vacature, that results in something called a SIP gap, where there's a difference between what state is required in its permitting program and what the federal SIP approved program requires, which, you know, that's the big distinction. What's in the SIP and what's outside of it? The state would have to conform its state program to the federal program or else lose its delegated authority to run that permanent program because the cooperative federalist scheme is premised on delegation. So the vacature would result in an improved federal program to which the state would need to conform. I'd also like to just quickly address exhaustion by reading the first two sentences of our comment. We say EPA is proposing to approve the revised definition of commencement operation with regard to oil and gas operations in IB-12. This definition excludes activities such as drilling wells, fracking wells, and completing wells. We went on to discuss the scale and extent of the pollution from these facilities, identifying that the NAAQS analysis needs to account for drilling, fracking, well completion emissions, which is what we're saying that commencement, the new definition excludes. And we also discussed minor sources. As Mr. Mitchell pointed out, the reason for that is twofold. First, anything that's not a major source is a minor source. So when you're talking about minor sources and you're talking about exemptions that apply to emissions that result in a source being minor, you're also talking at the same time about exemptions that should qualify minor sources major. And, you know, practically the reason we were addressing minor sources is because Colorado has never issued a major source permit for an oil and gas well pad in the non-attainment period. Despite repeated non-attainment, you know, nearly well over a decade of ozone levels exceed safe ambient concentrations. And despite a large part of that problem being attributed to the natural gas, excuse me, the oil gas industry as the largest contributor of ozone precursor pollution in the state, the largest human-caused source. Finally, I'd like to just in my 10 seconds try to state it since it seemed confusing. What changed? Federal law changed. Federal law previously required one definition of the commencement of operation that included fracking emissions. After this rulemaking, it includes a new addition to that definition that excludes fracking emissions. And we should be able to challenge that in court. It's a state interpretation that now has become federal law for the first time. Thank you, Your Honors. Thank you. Judge Carson, do you have any questions? No, I don't have anything. Thank you. Okay. Judge Baldock? No, I don't either. Thank you. Okay. Well, this matter is submitted. I have an editorial comment for all the lawyers. I thought your briefing and your arguments today were just superb. And so we really appreciate the diligence of all counsel in your excellent presentations. And all of you are to be commended for your excellent advocacy. But this matter will be submitted and court will be adjourned, subject to recall. And I'd ask my colleagues to stick around for a second. Thank you, Your Honor. Have a good afternoon. Thank you. You all too. Thank you.